IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BAILEY J.**[1], <br><br>      Plaintiff, <br><br>    v. <br><br> **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, <br><br>      Defendant. | Case No. 6:20-cv-1749-SI <br><br> **OPINION AND ORDER** |

Katherine L. Eitenmiller and Katie Taylor, WELLS, MANNING, EITENMILLER & TAYLOR, P.C., 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Benjamin J. Groebner, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Bailey J. seeks judicial review of the final decision of the Commissioner of the Social

Security Administration (Commissioner) denying his application for Supplemental Security

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Income (SSI) under Title XVI of the Social Security Act (Act). For the following reasons, the Court AFFIRMS the decision of the Commissioner.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for SSI on July 31, 2018, alleging a disability onset date of June 20, 2014. AR 15. Plaintiff's claim was denied initially on October 24, 2018, and again upon

reconsideration on April 17, 2019. *Id.* Plaintiff filed a written request for a hearing before an Administrative Law Judge (ALJ). *Id.* The ALJ held a hearing on March 12, 2020. *Id.*

Plaintiff was born on February 24, 1996, and he was 18 on the alleged disability onset date. AR 24. In a decision dated March 27, 2020, the ALJ found that Plaintiff was not disabled and thus not entitled to SSI. AR 26. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review, making the ALJ's decision final. AR 1. Plaintiff seeks judicial review of the ALJ's decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

    1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

    2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities.

PAGE 3 – OPINION AND ORDER

>    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.
>
> 3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.
>
> 4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### C. The ALJ's Decision

The ALJ performed the sequential analysis as noted above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after his application date, July 31, 2018. AR 17. At step two, the ALJ found that Plaintiff had severe impairments of major depressive disorder, panic disorder with agoraphobia, other specified anxiety disorder, including social anxiety and generalized anxiety disorder, posttraumatic stress disorder (PTSD), gender dysphoria post transition, hypersomnia, and hypotension. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of impairments required in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). AR 18.

The ALJ next determined Plaintiff's RFC. The ALJ found Plaintiff to have an RFC to perform a full range of work at all exertional levels. AR 19. The ALJ included the following non-exertional limitations: Plaintiff cannot climb ladders, ropes, or scaffolds or work around hazards such as dangerous machinery and unprotected heights; he can understand, remember, and carry out only simply routine job tasks with a Dictionary of Occupational Titles (DOT) General Educational Development (GED) reasoning level of two or less; and he can only have occasional interaction with the public and coworkers. *Id.* At step four, the ALJ found that Plaintiff had no past relevant work. AR 24. At step five, the ALJ considered Plaintiff's age,

education, work experience, and RFC and found Plaintiff able to make a successful adjustment to work that exists in significant numbers in the national economy, specifically as a Street Cleaner, Cleaner II, and Laundry Worker II. AR 24-25. As a result, the ALJ found that Plaintiff was not disabled under the Act. AR 25.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) discounting the medical opinions of Kris Hallenburg, PhD; Noelle Osborn, QMHP; Tamara Harty, LPC; and Lynn Hughes, FNP; (B) rejecting Plaintiff's subjective symptom testimony; and (C) rejecting competent lay witness testimony in the record. Plaintiff also argues that all the testimony that the ALJ erred in rejecting should be credited as true and the case remanded for benefits.

**A. Medical opinions**

Plaintiff filed his application for benefits on July 31, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations

and objective medical evidence to support his or her opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F. 4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### 1. Dr. Hallenburg

Kris Hallenburg, PhD, examined Plaintiff on March 26, 2019. AR 423. Dr. Hallenburg described Plaintiff's reported symptoms and history, as well as the results of her examination of him, and opined that Plaintiff has the following limitations:

> [Plaintiff] is able to manage [his] own funds.

> [He is] able to manage simple and complex tasks and would not need special instructions. However, it was evident on the mental status exam that as [his] anxiety increases [his] ability to manage simple tasks such as [his] performance on digit span [sic].
>
> [He] would have significant difficulty dealing with co-workers and the public and supervisors.
>
> [His] workweek would most likely be interrupted by panic attacks and agoraphobia.
>
> [He] may have trouble maintaining regular attendance due to depression and anxiety.
>
> [He] would most definitely have difficulty dealing with the usual stress encountered in the workplace.

AR 429.

Plaintiff contends that the ALJ erred in failing to explain why he rejected Dr. Hallenburg's conclusion that Plaintiff would have trouble interacting with supervisors. The ALJ, however, explained that this purported limitation was unsupported, stating that "[t]here is no indication that [Plaintiff] would have problems interacting with supervisors." AR 24. The ALJ previously had discussed Plaintiff's limitations in getting along with others as "an issue of avoidance of interactions rather than problems getting along with others." AR 18, citing AR 229 (Plaintiff reporting that she gets along "okay" with bosses and authority figures); AR 236 (the mother of Plaintiff's partner stating that Plaintiff does not have problems getting along with "family, friends, neighbors, or others"); *see also* AR 237 (the mother of Plaintiff's partner stating that Plaintiff gets along with authority figures "generally well"). Plaintiff cites no evidence in the record supporting a conclusion that Plaintiff would have problems interacting with supervisors.

Plaintiff also challenges the ALJ's conclusion that Plaintiff would have difficulty dealing with the usual stress encountered in the workplace. The ALJ, however, stated that the language used by Dr. Hallenburg was "ambiguous" and often did not preclude activities or exposures, or

PAGE 8 – OPINION AND ORDER

define the frequency in which specific activities or exposures could be performed or tolerated. AR 24. Stating that Plaintiff would have "difficulty" dealing with stress is such an ambiguous conclusion—it provides no definitive limitation or assessment that is helpful to the ALJ. The ALJ did not err in assessing these two opinions by Dr. Hallenburg.

### 2. Ms. Osborn

Noelle Osborn, QMHP[2] counseled Plaintiff's agoraphobia, depression, and PTSD. AR 433. Ms. Osborn treated Plaintiff once or twice monthly, beginning on June 26, 2017. *Id.* On October 5, 2017, Ms. Obsorn issued a letter opinion stating that, due to Plaintiff's "moderate to severe symptoms associated with" his panic disorder with agoraphobia, Plaintiff was unable to work at that time. AR 441.

In 2019, Ms. Oborn responded to disability questions regarding Plaintiff sent by Plaintiff's representative. AR 433. Ms. Osborn reported that Plaintiff had a difficult time "functioning overall" and that small tasks "are often nearly impossible for him." *Id.* She described that Plaintiff suffers from memory issues and that his dissociation would prevent him from working in most environments. *Id.* She noted that Plaintiff had attempted to volunteer at an animal shelter, but that frequent absences caused him to give that up. *Id.* She again opined that Plaintiff was "not suitable to work at present" based on his limitations. *Id.*

The ALJ found that Ms. Osborn's 2017 statement did "not constitute an opinion that could form a residual functional capacity." AR 22. The ALJ also found Ms. Osborn's 2019 responses to the disability questions unpersuasive. *Id.* The ALJ concluded that "[t]he available treatment records indicate that while [Plaintiff] has limitations particularly associated with social interactions, it does not mean that he is unable to perform simple tasks repetitively in a setting

---

[2] The ALJ misspelled Osborn's name. It does not have an "e" at the end.

that does not require such interactions as part of the work" and that the attendance issues described by Ms. Osborn "appear to be largely related to physical impairments (hypersomnia) that improved significantly with appropriate treatment less than a year from the application date." *Id.* The ALJ also noted that Plaintiff's treatment records show that he is on a minimal dose of his medication for anxiety, and there is no indication that he has tried a higher dosage or any other medication "to address the allegedly disabling mental symptoms overall." *Id.*

Plaintiff contends that the ALJ improperly rejected Ms. Osborn's 2019 opinion. Plaintiff argues that the ALJ's rejection that Plaintiff's symptoms were based on "social interactions" discounts Plaintiff's agoraphobia. The Court agrees. Ms. Osborn stated that she was treating Plaintiff for agoraphobia and that he was "prone to missing work or other activities due to strong agoraphobia which is unpredictable." AR 433.

The ALJ, however, also discounted Ms. Osborn's opinion because it was so heavily reliant on Plaintiff's mental health symptoms, and Plaintiff's only treatment was the conservative treatment of 50mg of Zoloft, which Plaintiff indicated was helpful, with no indication of increasing the dosage or different or further treatment. Plaintiff argues that there is no evidence that Plaintiff's symptoms would have been alleviated with more or different medication. That, however, is not the relevant question.

Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). The ALJ focused on the fact that Plaintiff is on a minimal dose of Zoloft for anxiety and "there have been no trials of a higher dose or use of other medications to address the allegedly disabling mental

symptoms overall." AR 22. Thus, the issue is not whether Plaintiff could have been fully treated with additional medication, but that it is reasonable to expect someone with completely disabling mental health symptoms to request or have been prescribed something other than a minimal dose of Zoloft. The ALJ's interpretation of the record is a reasonable interpretation.

### 3. Ms. Harty

The ALJ considered a report submitted by Tamara Harty, LPC, regarding her treatment of Plaintiff. AR 23. Ms. Harty indicated that she saw Plaintiff approximately once a week between October 2019 and January 2020 and described Plaintiff's self-reported symptoms. AR 528. Ms. Harty described Plaintiff's treatment plan and goals, including plans to attend counseling sessions and develop relationship and communication skills with goals of reducing anxiety and participating in at least one activity outside of the house every week. AR 539. The ALJ found that Ms. Harty's statement describing Plaintiff's reported symptoms, treatment plan, and treatment goals did not constitute an opinion about work related functioning. AR 23.

"A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed" elsewhere in the regulations. 20 C.F.R. § 416.913(a)(2). Ms. Harty did not describe any impairment-related limitations or describe Plaintiff's abilities despite his limitations. Rather, Ms. Harty merely provides her treatment history, treatment plan, and records of Plaintiff's self-reported symptoms. Ms. Harty did not address or assign any specific functional limitations or offer an opinion on Plaintiff's ability to perform work-related tasks. Thus, the ALJ did not err in concluding that Ms. Harty's reports are not "medical opinions" within the meaning of the regulations.

### 4. Nurse Practitioner Hughes

The ALJ also considered a form completed by Lynn Hughes, FNP, in February 2020. AR 23. Ms. Hughes began treating Plaintiff in October 2019 and completed the form after seeing Plaintiff two times. Ms. Hughes diagnosed Plaintiff with gender dysphoria, transgenderism, depression, PTSD, and hyposomnia. AR 560. Ms. Hughes described Plaintiff's symptoms as "extreme fatigue and sleepiness, anxiety, and depression." AR 561. Ms. Hughes opined that Plaintiff would have to lie down during the day due to his hypersomnia. *Id.* Ms. Hughes concluded that Plaintiff could sit for 60 minutes and stand/walk for 60 minutes at one time. AR 562. Ms. Hughes also concluded that Plaintiff could sit for eight hours and stand/walk for two hours in an eight-hour workday. *Id.* Ms. Hughes opined that Plaintiff would need a job that allowed him to shift positions at will from sitting, standing, or walking. *Id.*

Ms. Hughes concluded that due to drowsiness, Plaintiff would need to take daily unscheduled breaks of between one and two hours. AR 563. Plaintiff would be "off task" 20% of the day. AR 564. And due to hypersomnia, he would miss more than four days per month. *Id.*

The form asked if Plaintiff had limitations in repetitive reaching, handling, or fingering. Ms. Hughes responded "No." AR 563. The form continued, stating if the answer is "yes" to indicate the percentage of time a claimant could use hands for grasping, fingers for fine manipulation, and arms for reaching. Despite having responded "no" that Plaintiff did *not* have any limitations on such activities, Ms. Hughes completed the next portion of the form. She opined that Plaintiff could use each hand and grasp only 40% of the time, use her fingers and manipulate only 40% of the time, and use each arm and reach only 20% of the time. *Id.*

The ALJ discounted Ms. Hughes' opinion as unpersuasive. The ALJ noted that Ms. Hughes provided no support for the limitations she found relating to Plaintiff's upper extremities. The ALJ also explained that Ms. Hughes described dizziness and sleep disturbances

PAGE 12 – OPINION AND ORDER

as a complaint but yet Plaintiff appeared alert and oriented at the appointment with Ms. Hughes and with normal mood and affect. The ALJ found that Plaintiff's conduct (alertness and affect) in the two appointments provided an insufficient basis for the findings of fatigue by Ms. Hughes.

Plaintiff offers no response to the ALJ's reasoning regarding Ms. Hughes' opined limitations with respect to Plaintiff's upper extremities. Ms. Hughes' opinion is internally inconsistent (stating there were no limitations and then reciting limitations) and the limitations are not supported by Ms. Hughes' chart notes or the evidence in the record.

Regarding Plaintiff's sleep disturbance, fatigue, and related limitations, the Court agrees with Plaintiff that the simple fact that Plaintiff was alert at the appointment was not a sufficient basis to reject those opinions. A claimant can suffer from fatigue and not be fatigued at a particular appointment, just as a claimant can suffer from depression and not be depressed at a particular appointment. The ALJ, however, earlier in the opinion specifically discussed Plaintiff's purported fatigue and sleep issues, finding that his sleep issues responded well to treatment, that Plaintiff did not suffer from daytime sleepiness, and that Plaintiff would not miss work due to daytime sleepiness or fatigue. *See* AR 21-22. Considering the record as a whole, the ALJ's discounting of Ms. Hughes' testimony is supported by substantial evidence.

## B. Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

      The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

      The ALJ reviewed Plaintiff's subjective symptom testimony, and found that his "statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with a sparse treatment record concerning mental impairments and the reports of good response to treatment when sought for medically determinable physical impairments." AR 21. The ALJ described that "[t]here is no indication [that Plaintiff] currently engages in ongoing counseling or other mental health treatment aside from medication being prescribed by a primary care

provider," and also noted that the medication prescribed proved "'[v]ery stabilizing for anxiety issues'" even at a relatively low dose. *Id.* The ALJ discussed Plaintiff's reported inability to complete his volunteer duties at an animal shelter due to tiredness—and not due to anxiety or trauma—but also that Plaintiff reported that his tiredness improved with treatment. *Id.* In further considering Plaintiff's claims of excessive drowsiness, the ALJ noted that Plaintiff was diagnosed with "moderate daytime somnolence," *id.*, but that no excessive drowsiness was observed during examinations in 2019, AR 22. The ALJ concluded that "[t]he additional limitations on exposure to hazards and performance of postural activities that could exacerbate the condition are sufficient to address this condition." *Id.*

Plaintiff objects that the ALJ improperly rejected Plaintiff's subjective symptom testimony, arguing that his symptom testimony is consistent with the medical evidence in the record. Plaintiff asserts that the ALJ erred in relying on Plaintiff's conservative treatment and evaluating his fatigue and sleep issues.

The ALJ did not err in the analysis of Plaintiff's subjective symptom testimony. With respect to Plaintiff's low dose of medication, as discussed above in considering the ALJ's assessment of Dr. Hallenburg's opinion, Plaintiff and his doctors' failure to consider a more aggressive treatment is an indication that Plaintiff's symptoms were not "as all-disabling" as he contends. *Tommasetti*, 533 F.3d at 1039. If a claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Here, Plaintiff did not provide a good reason for failing to pursue more aggressive treatment for his mental illness.

Regarding Plaintiff's alleged fatigue and daytime sleepiness, the ALJ noted that Plaintiff reported "immediate improvement" as soon as he started taking medication prescribed by Dr. Dainis Irbe in 2019. AR 21-22; *see also* AR 442-44 ("[Plaintiff] noticed immediate improvement from using just 1/2 pill of modafinil, he was awake alert for the most part of the day and in fact he had few episodes of insomnia from excessive alertness. He was awake and alert for almost 20 hours after he decided to take 1 pill of modafinil."). This is inconsistent with Plaintiff's assertion at the March 2020 hearing that Plaintiff naps throughout the day, for between two to four hours, multiple times a day. AR 39. As the ALJ noted, in 2019 Plaintiff reported that he had never "fallen asleep during normal activities or in dangerous situations." AR 22 (citing AR 458). A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The Court is not persuaded that the ALJ erred in considering Plaintiff's subjective symptom testimony about his daytime sleepiness.

## C.  Lay witness testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff's former partner's mother, Kathy Grimwood, completed a third-party function report in October 2018, AR 232-39, and completed another statement in December 2019. AR 279-80. She described that Plaintiff is "unable to function in society due to his PTSD and

PAGE 18 – OPINION AND ORDER

agoraphobia." AR 232. She said that he is "sometimes too depressed to function," but that he otherwise has no issues caring for himself. AR 233. She reported that Plaintiff has difficulty completing physical tasks because of his back and shoulder injuries, but that his "true problems occur with social interaction in public due to anxiety, stress, and disassociation." AR 237. Ms. Grimwood noted that Plaintiff "generally" gets along "well" with authority figures, but that stress can shut him down. AR 237-38. She described that she "witnessed countless incidents where [Plaintiff's] hypersomnolence, anxiety, depression, disassociation and agoraphobia prevented [Plaintiff] from leaving his apartment and participating in life," and that, at times, Plaintiff went "weeks at a time without even being able to step out of the apartment and into the hallway." AR 279-80.

The ALJ concluded that, although Ms. Grimwood's statements regarding Plaintiff's limitations are "accepted as descriptive of [Ms. Grimwood's] perceptions, . . . the behavior observed is not fully consistent with the medical and other evidence of record." AR 20. Specifically, the ALJ found that "[t]he limitations described are not suggestive of an inability to sustain work activity within the residual functional capacity" and "the medical record does not support the asserted degree of exhaustion and need for withdrawal" that Ms. Grimwood described. *Id.*

Plaintiff argues that the ALJ erred in rejecting Ms. Grimwood's testimony because "the lay witness testimony is entirely consistent with the lay observations, as fully addressed above" in the section addressing the ALJ's rejection of Plaintiff's subjective symptom testimony. ECF 21, at 21. The Court, however, has upheld the ALJ's assessment of Plaintiff's subjective testimony. Further, the ALJ found Ms. Grimwood's testimony unsupported by the medical evidence, which the Court has also upheld, further supporting the ALJ's conclusion.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 28th day of September, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge